IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ANNIE W. BLOUNT,                    *
                                    *
        Plaintiff,                  *
                                    *
    v.                              *        CV 114-162
                                    *
MCG HEALTH, INC., d/b/a GEORGIA     *
REGENTS MEDICAL CENTER,             *
                                    *
        Defendant.                  *

————————

**O R D E R**

————————

*Pro se* Plaintiff alleges Defendant terminated her employment as an act of racial discrimination and in retaliation for her filing an EEOC charge. The Court **GRANTS** Defendant's motion for summary judgment (doc. 20) and **DENIES** Plaintiff's cross-motion (doc. 39) because Defendant indisputably terminated Plaintiff's employment for the legitimate reason that she engaged in two acts of insubordination by refusing to attend a staff meeting and rehanging a banner in defiance of an order to remove it.

## I.  BACKGROUND

Plaintiff, an African-American female, began working for Defendant in the Georgia Regents University Cancer Center as a social worker on November 16, 2009. (Annie Blount Dep. 54:4-25;

Def. Ex. 4; Steven Black Decl. ¶ 4.) Termination of her employment occurred on February 6, 2013. Several events occurred during 2012 and January 2013 that either relate directly to her claims and the termination of her employment, or are at the very least illuminative of Plaintiff's workplace attitude and relationships.

### A. Promotion of Susan Doughtie to Social Worker Supervisor

Defendant promoted Ms. Susan Doughtie, a Caucasian, to the position of social worker supervisor in October 2012. (Blount Dep. 84:13 - 85:4; Def. Ex. 21; Decl. of Susan Doughtie, June 29, 2015, ¶¶ 1, 2.) Plaintiff felt "the whole situation was discriminatory and that Susan, who was my part-time co-worker was white, for her to have been promoted as my supervisor when I was doing the work and I had to actually train her, the whole situation was discriminatory." (Blount Dep. 255:9 - 19.) Plaintiff did not apply for the supervisor position given to Ms. Doughtie. (Blount Dep. 280:19 - 281:7.)

### B. Moving Into Shared Office Space

In late November 2012, several employees changed offices, including Plaintiff, due to growth and limited office space. (Doughtie Decl. ¶ 7.) Plaintiff was upset about having to move during a scheduled clinic meeting. (Blount Dep. 99:18 - 100:9;

203:12-14.)    Plaintiff also had to share her new office space with a colleague, Ms. Bridget Story.    (Black Decl. ¶ 6; Doughtie Decl. ¶ 7.)    On December 4, 2012, Plaintiff sent Dr. Samir Khleif, a director at the Cancer Center, an email entitled "Space Matters" that referred to the office move as humiliating and a "debasement."    (Def. Ex. 27; Blount 121:14 - 123:14.) Plaintiff testified she only complained about the office move on November 29, 2012 behind closed doors to the chaplain and did not publicly gripe about it.    (Blount Dep. 215:20 - 216:20, 241:10-16; Def. Ex. 55.)

### C.    2012 Performance Evaluation

Ms. Doughtie solicited feedback for Plaintiff's 2012 performance evaluation on November 28, 2012.    (Blount Dep. 107:5 - 17; Def. Ex. 26; Doughtie Decl. ¶ 3.)    Because Ms. Doughtie had only supervised Plaintiff for three weeks, she contacted eight physicians and four nurse navigators exclusively assigned to Plaintiff as of November 2012 for input.    (Doughtie Decl. ¶3; Blount Dep. 91:17 - 93:7; Def. Ex. 24; Doughtie Decl. ¶3.)    Two physicians and two nurse navigators responded.    (Blount Dep. 149:18-21; Def. Ex. 40; Doughtie Decl. ¶ 3.)

Plaintiff received an overall rating of 1.7 out of 3.0, within the range of "meets expectations" and just above the

range for "below expectations." (Blount Dep. 107:24 - 109:8; Def. Ex. 26.) Evaluation critiques included Plaintiff was resistant to change, difficult to locate in clinic, difficult when working with peers, and she failed to go the extra mile with patients and co-workers. (Blount Dep. 109:22 - 110:7, 110:16-20, 115:3-6, 115:25 - 116:5, 117:22 - 118:1; Def. Ex. 26.)

Plaintiff asked two employees to provide Ms. Doughtie with additional feedback. (Blount Dep. 138:14-22, 161:2-12.) In response, Ms. Doughtie received positive feedback from Ms. Carissa Moser, a nurse practitioner, on December 7, 2012. (Blount Dep. 138:14-22; Doughtie Decl. ¶ 15.) And on December 10, 2012, Ms. Doughtie received from Ginger Marshall, a nurse, positive feedback but also comments regarding the need for improvement. (Doughtie Decl. ¶ 15.) Ms. Doughtie informed Plaintiff that Ms. Moser's comments would not have improved her performance rating to the next level, in reply to Plaintiff's contention that her comments should have been included in the evaluation. (Blount Dep. 161:7-11.) Plaintiff refused to sign her evaluation and it was submitted without her signature. (Blount Dep. 155:17 - 156:10; Def. Ex. 42.)

On December 10, 2012, Plaintiff complained to Mr. Steven Black, the Cancer Center Administrative Director, Ms. Tracey

Slagle, her former supervisor, and Ms. Doughtie that Ms. Doughtie should not have completed her evaluation because she had been Plaintiff's supervisor for less than one month. (Blount Dep. 145:18 – 146:14; Def. Ex. 39; Black Decl. ¶ 9; Doughtie Decl. ¶ 16.) Mr. Black explained that Ms. Doughtie received input from multiple physicians and nurses and instructed Plaintiff to focus on the areas for improvement. (Blount Dep. 145:25 – 146:14; Def. Ex. 39; Black Decl. ¶ 9.)

Plaintiff believes Ms. Doughtie did not give her a fair evaluation because of her race. (Blount Dep. 181:19-24.) However, Ms. Doughtie never used any racially offensive language. (Blount Dep. 182:5-7.) During Plaintiff's three and a half years at the Cancer Center, no one ever directed any racial comments toward her, and no one ever said anything to Plaintiff suggesting Ms. Doughtie had a bias against African-Americans. (Blount Dep. 182:8-11; 391:23 – 392:4.)

D. **Encounter with Infusion Nurse Patti Parrish**

On December 3, 2012, Patti Parrish, an infusion nurse, experienced difficulty locating Plaintiff to assist with a patient. (Blount Dep. 123:19 – 125:19; Def. Ex. 28; Doughtie Decl. ¶ 10.) When Ms. Parrish finally made contact, Plaintiff refused to assist and gave Ms. Parrish contact information for

the social worker assigned to the patient. (Blount Dep. 124:20-125:6; Def. Ex. 28; Def. Ex. 62, p. 10.) Plaintiff testified Ms. Parrish had difficulty locating her because her office phone had not been set up yet and her cell phone was not receiving service that day. (Blount Dep. 218:19 - 220:3; Def. Ex. 62, pp. 9-10, 16-17.) Plaintiff contends she refused to assist because Ms. Doughtie had instructed her to not assist other social worker's patients and Ms. Parrish did not explain that the patient was experiencing domestic abuse. (Blount Dep. 218:19 - 220:3; Def. Ex. 62, pp. 9-10, 16-17.)

### E. Placement on Performance Improvement Plan

On December 12, 2012, Plaintiff was placed on a Performance Improvement Plan ("PIP") during a meeting with Ms. Doughtie, Ashley Nix, and Mr. Black. (Blount Dep. 212:6 - 214:16; Def. Ex. 55; Doughtie Decl. ¶ 17; Nix Decl. ¶ 11; Black Decl. ¶ 10.) As reasons for its issuance, the PIP cited that Plaintiff (1) engaged in gross misconduct by sleeping in multiple multi-disciplinary meetings prior to December 3, 2012; (2) exhibited disruptive behavior by complaining about the office move to co-workers the day of the move; and (3) failed to follow protocol by refusing to assist Ms. Parrish with a patient who was a victim of abuse. (Doughtie Decl. ¶ 17; Nix Decl. ¶ 11; Black Decl. ¶ 10;

Def. Ex. 55; Blount Dep. 219:5-11.) The PIP warned Plaintiff she could be disciplined or terminated if she violated policy or there were other performance concerns. (Blount Dep. 220:14-19; Def. Ex. 55; Doughtie Decl. ¶ 17; Black Decl. ¶ 10; Nix Decl. ¶ 11.)

Plaintiff objected, claiming she did not complain openly about the office move and the incident with Ms. Parrish was caused by phone problems and Ms. Parrish's failure to advise that the patient was an abuse victim. Ms. Doughtie informed Plaintiff the PIP would remain in place with an amendment to remove the reference to Ms. Parrish telling Plaintiff the patient had been abused. (Blount Dep. 244:24 - 245:23, 248:12 - 249:15; Def. Ex. 63; Doughtie Decl. ¶ 18; Nix Decl. ¶ 13; Black Decl. ¶ 11.)

**F. Plaintiff's Initial Complaints of Discrimination**

On December 26, 2012, Plaintiff emailed Mr. Black she was "being targeted for psychologically and professionally abuse" and was "being professionally sabotaged." (Blount Dep. 254:9 - 255:5; Def. Ex. 65; Black Decl. ¶ 12.) Plaintiff testified that, at the point, she did not mention discrimination in her email because she did not consider it to be racial discrimination. (Blount Dep. 255:6-11; Def. Ex. 65). However, Plaintiff contacted the EEOC on December 27 or 28, 2012 and

7

submitted an EEOC Intake Questionnaire on December 31, 2012. (Blount Dep. 193:8-10, 258:8-20, 260:18-25; Def. Ex. 68.)

In the Intake Questionnaire, Plaintiff wrote that issuance of the PIP was racial discrimination, and Plaintiff elaborated in her deposition she believed it was "more so retaliation" for a complaint she made about her performance evaluation on December 10th. (Blount Dep. 264:21 - 265:11; Def. Ex. 68.) However, Plaintiff did not complain of discrimination on December 10, 2012 and made her first official complaint of discrimination when she contacted the EEOC on December 27 or 28, 2012. (Blount Dep. 354:5-9.) In her email on December 10, 2012 to Mr. Black, Ms. Slagle, and Ms. Doughtie, she merely complained it was unfair to have Ms. Doughtie conduct her evaluation since she had only been supervisor for a month. (Blount Dep. 145:18 - 146:14; Def. Ex. 39; Black Decl. ¶ 9; Doughtie Decl. ¶ 16.)

**G. The Banner Incident**

On January 15, 2013, Ms. Doughtie instructed Plaintiff to remove a decorative banner from the receiving tray of a facsimile machine because (1) it was a violation of the regulations by the Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO"); and (2) it could cause a paper jam. Plaintiff initially removed the banner but rehung

it. (Blount Dep. 338:3-13, 340:18-21; Doughtie Decl. ¶ 21.) When Ms. Doughtie discovered the rehung banner on January 31, 2013, Plaintiff explained she had taken it down for a JCAHO inspection but rehung it once the inspectors left. (Doughtie Decl. ¶ 26.) Ms. Doughtie never told Plaintiff she could rehang the banner after the inspection. (Blount Dep. 339:5-8.) Mr. Black testified by affidavit that the banner was, in fact, a violation of JCAHO regulations. (Black Decl. ¶ 20.) Plaintiff disagrees. (Blount Dep. 340:13-17.)

Plaintiff pointed out to Ms. Doughtie that a decorative vase belonging to Ms. Story was also a JCAHO violation because it was on a top shelf and too close to the ceiling. (Black Decl. ¶ 20.) Ms. Story removed the vase when instructed to do so, and she did not subsequently try to put it back on the top shelf. (Black Decl. ¶ 20; Blount Dep. 360:4 - 12.) Plaintiff alleges Ms. Story left a second, smaller vase on her shelf that was also a JCAHO violation. (Blount Decl. ¶ 3, Blount Dep. 360:4 - 12.) Mr. Black testified it complied with the JCAHO requirement of an eighteen inch clearance from the ceiling, and therefore, she did not have to move it. (Black Decl. ¶ 20.)

### H. Plaintiff's Refusal to Attend a Team Meeting

On the morning of January 25, 2013, Ms. Doughtie informed

Ms. Story and Plaintiff by email that she had scheduled a staff meeting at 3:00 p.m. in the office shared by Plaintiff and Ms. Story. (Blount Dep. 292:16 - 293:4; Def. Ex. 75; Doughtie Decl. ¶ 22.) At 2:50 p.m., Ms. Doughtie sent a second email advising she had changed the location to a conference room. (Blount Dep. 293:8-18; Def. Ex. 76; Doughtie Decl. ¶ 22.) Plaintiff missed Ms. Doughtie's second email because she went to the restroom and did not check her Blackberry. (Blount Dep. 293:17-22.) Plaintiff returned to her office and waited for the meeting to take place. Neither Ms. Story nor Ms. Doughtie was there. (Blount Dep. 293:20 - 294:4.) Plaintiff did not make any inquiries but instead just sat and waited. (Blount Dep. 299:20-300:1.)

Ms. Doughtie called Plaintiff around 3:05 p.m. to see where Plaintiff was and inform her of the location change. (Blount Dep. 301:2-12, 302:3-18; Doughtie Decl. ¶ 22.) Plaintiff chose to not attend the meeting because Ms. Doughtie would not permit Plaintiff to record the meeting. (Blount Dep. 301:13-22, 302:19 - 304:1, 304:11-19, 305:10-21; Doughtie Decl. ¶ 22.) Plaintiff wanted to record the meeting so "that way no one could use my words against me later." (Blount Dep. 303:14 - 304:1.) Plaintiff told Ms. Doughtie she "could not afford to meet with

her without recording it" and that she was "not coming" to the meeting. (Blount Dep. 336:25 - 337:14; Def. Ex. 92.)

Ms. Doughtie notified Mr. Black of Plaintiff's failure to attend the meeting, and Mr. Black suggested initiation of the process to fire her. (Doughtie Decl. ¶ 23; Doughtie Decl. Ex. C; Black Decl. ¶ 16; Black Decl. Ex. A; Nix Decl. ¶ 15 & Ex. A.)

### I.   Plaintiff's Termination

On February 1, 2013, Plaintiff and Ms. Doughtie attended a meeting with Tiffany McGuire from Human Resources to review the recent problems with Plaintiff's work performance and attitude. On February 4, 2013, Ms. McGuire emailed Plaintiff suggestions for two jobs in organizations affiliated with MCG Health. (Blount Dep. 330:5-23; Def. Ex. 90.)   Plaintiff did not pursue either.   (Blount Dep.   331:4-12; Def. Ex. 90.)   Plaintiff met with Ms. Doughtie, Mr. Black, and Ms. Nix on February 6, 2013, and Ms. Nix offered her the choice to be terminated or resign in lieu of termination.   (Blount Dep. 333:11-22; Doughtie Decl. ¶ 28.)   Plaintiff did not resign and was terminated.   (Blount Dep. 333:22 - 335:3.)   Defendant hired LaKeesha Cooks, an African-American, to replace Plaintiff as a social worker in the Cancer Center. (Doughtie Decl. ¶ 32; Black Decl. ¶ 22; Nix Decl. ¶ 29.)

Plaintiff's discharge summary recounts imposition of the

PIP on December 12, 2012 due to "gross misconduct" and lists two infractions warranting termination, Plaintiff's refusal to attend the staff meeting on January 25, 2013 and rehanging of the banner. (Blount Dep. 336:6-11, 337:21 - 338:2; Def. Ex. 92.) According to the decision makers, both infractions constituted acts of insubordination and sufficient cause for immediate discharge under MCG Health's Rules of Conduct. (Doughtie Decl. ¶ 28; Black Decl. ¶ 19; Nix Decl. ¶ 17.) Those rules define insubordination as the "refusal or willful disobedience of a reasonable request from a supervisor or another in a position of authority." (Def. Ex. 16, p. 2; Blount Dep. 73:24 - 74:13.)

**J.  Plaintiff's Appeal of Her Termination**

On February 12, 2013, Plaintiff submitted a Discharge Dispute Request in accordance with company policy. (Blount Dep. 350:10 - 351:2; Def. Ex. 97; Nix Decl. ¶ 20.) By letter dated February 26, 2013, Joseph Thornton, Vice President of Ambulatory Care, upheld the discharge and explained that, by putting the banner back on the fax machine, Plaintiff willfully failed to comply with a reasonable request of her supervisor. (Blount Dep. 365:1-8, 366:18 - 367:2; Def. Ex. 100; Nix Decl. ¶ 22.)

On February 27, 2013, Plaintiff appealed her termination to

Susan Norton, Vice President of Human Resources.[1]  (Blount Dep. 367:15-23; Def. Ex. 101; Nix Decl. ¶ 23.)  Ms. Norton upheld Plaintiff's termination by letter dated March 18, 2013.  (Blount Dep. 380:10-19; Def. Ex. 105; Nix Decl. ¶ 24.)  Ms. Norton explained that Plaintiff's "conscious decision to place the banner back on the fax machine . . . was the action considered to be insubordinate."  (Blount Dep. 383:25 - 384:6; Def. Ex. 105.)  Ms. Story was not treated differently, Ms. Norton explained, because Ms. Story had removed the vase from her shelf as instructed and never returned it.  (Def. Ex. 105.)  Ms. Norton also found Plaintiff's refusal to attend the staff meeting to be insubordinate.  (Blount Dep. 385:12-17; Def. Ex. 105.)

Plaintiff next appealed to Steven Scott, an African-American who is the Chief Operating Officer for MCG Health.  (Blount Dep. 392:20 - 393:3; Def. Ex. 110; Nix Decl. ¶ 25.)  On April 10, 2013, Mr. Scott notified Plaintiff that he saw no reason to change the termination decision.  (Blount Dep. 393:25 - 395:8; Def. Ex. 112; Nix Decl. ¶ 26.)  Mr. Scott's decision was the

---

[1] Also on February 27, 2013, Plaintiff emailed Ms. McGuire that she "would like to make a formal complaint of discrimination and harassment."  (Blount Dep. 368:23 - 369:11; Def. Ex. 102; Nix Dec. ¶ 23.)  Plaintiff explained that, with regard to Ms. Doughtie's actions, "maybe it [sic] professional jealousy or pure racism, I am not sure" and that "[i]t could have been a number of things."  (Blount Dep. 372:15- 25; Def. Ex. 102.)

final stage of the discharge dispute process. (Blount Dep. 395:12-23; Def. Ex. 113; Nix Decl. ¶ 27.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of

proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. at 323). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material

15

fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

> **B. Plaintiff Cannot Satisfy the Prima Facie Elements of Her Title VII Discrimination Claim Because There Is No Evidence Defendant Treated More Favorably a Similarly Situated Employee Not of the Same Protected Class.**

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff has not presented any direct evidence of discrimination, the Court must analyze her disparate treatment claim under Title VII using the

framework outlined by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999).

In a disparate treatment case, the plaintiff bears the ultimate burden of proving that the employment action at issue was taken because of the plaintiff's protected status. EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir. 2000). Under the McDonnell Douglas framework, the plaintiff must first come forward with a prima facie case of employment discrimination. If the plaintiff establishes a prima facie case, she raises the inference that discriminatory intent motivated the challenged action. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant carries its burden, the plaintiff retains the burden of persuasion to show that the employer's proffered explanation was not the real reason for the employment change, but was instead a pretext for discrimination. Texas Dep't of Cmtv. Affairs v. Burdine, 450 U.S. 248, 256 (1980).

If, however, the plaintiff fails to establish a prima facie case for discrimination, summary judgment in favor of the

defendant is proper. Summer v. City of Dothan, Ala., 444 F. App'x 346, 350 (11th Cir. 2011) (affirming summary judgment in favor of employer where former employee alleging race and sex discrimination under Title VII failed to establish a prima facie case for discrimination). To establish a prima facie case of disparate treatment, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who were not of the same protected class more favorably; and (4) she was qualified to do the job. Mavnard v. Board of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003); Holifield, 115 F.3d at 1562.

The parties do not dispute that Plaintiff, an African-American female, is a member of a protected class, was qualified for the job, and suffered an adverse employment action. Further, because Plaintiff was replaced by a member of the same class, there is no allegation of a prima facie case through replacement by a member outside of her protected class. However, the parties do disagree over whether Plaintiff was treated less favorably than a similarly situated employee of a different race, Ms. Story.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)(citations omitted). Plaintiff bears the burden of showing adequate similarities between her conduct and that of others outside her protected class. Summers, 444 F. App'x at 348 (11th Cir. 2011). Indeed, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second guessing employer's reasonable decisions and confusing apples with oranges." Maniccia, 171 F.3d at 1369.

Here, Defendant terminated Plaintiff because she rehung the banner after Ms. Doughtie told her to remove it as a potential JCAHO violation, and she refused to attend a staff meeting because she could not record it. Plaintiff contends Ms. Story is a proper comparator because the vase on top of her shelf was also a JCAHO violation and she was never reprimanded for it. However, Plaintiff fails to point out *any* acts of insubordination by Ms. Story, much less two. Indeed, the undisputed evidence is that Ms. Story complied with instructions to remove the vase and never returned it. (Black Decl. ¶ 20;

Blount Dep. 360:4 – 12.) Furthermore, Ms. Story attended the staff meeting Plaintiff refused to attend on January 25, 2013, and nothing in the record suggests that Ms. Story ever refused to attend a staff meeting or otherwise defied any orders from her supervisors.

Undeterred, Plaintiff points to a second vase Ms. Story left on the shelf that Plaintiff believes to be a JCAHO violation. Plaintiff has presented no evidence that a supervisor ever instructed Ms. Story to remove this second vase. Mr. Black explained the second vase did not have to be removed because it did not constitute a JCAHO violation. (Black Decl. ¶ 20.)

In her untimely motion for summary judgment, Plaintiff appears to argue for the first time that Ms. Story is a proper comparator because, after Plaintiff's termination, Ms. Story failed to lock her office and left her patient files vulnerable to theft. (Doc. 39, pp. 9-10.) In support, Plaintiff submitted an email from Ms. Doughtie instructing Plaintiff and Ms. Story to lock the door to their office when leaving. (Id. at 23.) Plaintiff also submitted a declaration from LaKeesha Cooks, Plaintiff's replacement, stating she "witnessed the door to the office that I shared with Bridgett Story unlocked and open even

when both Ms. Story and I was [sic] out of the building. Medical records that was [sic] under my responsibility was [sic] kept locked in my desk drawer." (Cooks Decl. ¶ 6.) Plaintiff asserts, without supporting evidence, that Defendant terminated Ms. Story's employment because leaving the door open violated the Health Insurance Portability and Accountability Act ("HIPAA"). (Id.) The argument fails to raise a genuine issue of material fact or show entitlement to summary judgment for at least five reasons.

First, Plaintiff filed her motion for summary judgment almost three months after the deadline given in the Court's Scheduling Order, and the Court is not required to consider it. Young v. City of Palm Bay, Fla., 358 F.3d 859, 863 (11th Cir. 2004). Second, Plaintiff failed to include any of the facts about Ms. Story's alleged insubordination in her response to Defendant's summary judgment motion, which is required at a bare minimum by Loc. R. 56.1.[2] (See doc. 36.)

---

[2] Plaintiff's untimely motion also alleges spoliation of (1) notes allegedly taken by Ms. McGuire during the February 1, 2013 meeting; and (2) an email exchange between Ms. Doughtie and Mr. Black on January 25, 2013. (Doc. 39, pp. 2-6.) The first allegation is based on mere speculation by Plaintiff that notes would have been taken during such an important meeting. (Doc. 39, pp. 4-5.) There is no evidence to support a finding of spoliation. The second accusation is without merit because Defendant produced the original email. (Doc. 28, p. 19; Jason Rote Decl. ¶¶ 2-5.)

Third, the declaration from Ms. Cooks fails to state whether Ms. Cooks or Ms. Story was at fault for leaving the door unlocked. Fourth, Plaintiff fails to show that, if Ms. Story left the door open, she did so intentionally and in willful violation of the order from Ms. Doughtie to keep the door locked. Fifth, Plaintiff admits Ms. Story resigned in lieu of termination because of the HIPAA violations, the same option given to Plaintiff, which means Ms. Story was not treated more favorably than Plaintiff.

> **C.  Even if Plaintiff Could Satisfy the Prima Facie Elements of Her Discrimination Claim, She Has Failed to Rebut the Legitimate, Nondiscriminatory Reasons Given for Her Termination.**

If the plaintiff is able to establish a *prima facie* case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. McDonnell Douglas Corp., 411 U.S. at 802-03. If the employer articulates one or more such reasons, the plaintiff has the opportunity to come forward with evidence to establish that the employer's articulated reasons are merely pretexts for discrimination. Id. at 804.

To show pretext, and "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee

cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. If the employer proffers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. Id. at 1037. A legitimate nondiscriminatory reason proffered by the employer is not a "pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993) (citation omitted).

Plaintiff does not dispute that she chose to rehang the banner in violation of the order from Ms. Doughtie to remove it, and that she refused to attend the staff meeting because she could not record it. Ultimately, Plaintiff quibbles with the strength of Defendant's reasons, not their truthfulness. By failing to rebut these legitimate, nondiscriminatory reasons for her termination, Plaintiff has failed to meet her burden under the McDonnell Douglas framework.

> **D.** **Plaintiff's Retaliation Claim Suffers from the Same, Fatal Defect That Plaintiff Has Failed to Rebut Defendant's Legitimate, Non-Retaliatory Reasons for Her Termination.**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment

action; and (3) she established a causal link between the protected activity and the adverse action. <u>Bryant v. Jones</u>, 575 F.3d 1281, 1307-08 (11th Cir. 2009). Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. <u>Id.</u>

Even assuming Plaintiff can present a prima facie case of retaliation, she has failed to rebut Defendant's legitimate, nonretaliatory reasons for her termination, as discussed above regarding Plaintiff's discrimination claim.

## III. <u>CONCLUSION</u>

The Court **GRANTS** Defendant's motion for summary judgment (doc. 20), **DENIES** Plaintiff's motion for summary judgment (doc. 39), **DIRECTS** the Clerk to enter final judgment in favor of Defendant, and **CLOSES** this civil action.

SO ORDERED this 29th day of March, 2016, at Augusta, Georgia.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA